UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        *Plaintiff,*

vs.                                           Case No. 24-cr-50-JDP

STEVEN ANDEREGG,

        *Defendant.*

---

## MEMORANDUM IN SUPPORT OF BOND

---

Steven Anderegg, by counsel, files this brief in support of pretrial release and in opposition to the government's appeal. This Court knows the standards and has seen the prior filings and the pretrial release report. So this will be brief and focus on the salient points that will likely control this Court's analysis.

The Bail Reform Act does not demand that the defense show that there is absolute certainty that the defendant doesn't pose a danger to the community. Rather, it imposes on the government that it establish by "[c]lear and convincing evidence" that the defendant is such a danger that no conditions short of danger will protect the community—meaning: proof that *this* particular defendant actually poses a danger, not that defendant in theory poses a danger.[1] And [e]evidence of danger should involve

---

[1] *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) ("Essentially, the judge found that although in theory a Mafia Boss was an intimidating and highly dangerous character, the government had not demonstrated that this Boss posed a significant danger, or at least not a danger that could not be overcome given appropriate conditions.").

1

                                                                                  HURLEY BURISH, S.C.

"specific and quantifiable evidence."[2] Indeed, "Section 3142 does not seek ironclad guarantees."[3] Or as this Court has noted, we don't have to keep the defendant in a "hermetically sealed chamber." Yet that's what Judge Crocker essentially asked for and that's the release plan that the defense has given this Court.

There is no basis (whatsoever) to challenge the plan that's been formulated by the defense and investigated and blessed by the probation office. The custodian that's being challenged is a lifelong family friend, whose only crime was twenty years ago and involved shining. Under the plan, Anderegg has no access to technology or kids. And the idea that the custodian isn't "technologically sophisticated enough" is nonsense. He's a sentient being who can see whether Anderegg has a computer or a tablet or a phone with him—you don't need to be "sophisticated" to know that mere possession of an object is prohibited. So there is no real argument that the third-party custodian can't provide an adequate eye on Anderegg.

That leaves the government's argument that the location is inadequate. But it's a quarter mile from another house and that house doesn't have kids. He's miles from a child. That is as good as anyone could demand or hope for. To save the Court the time, here's the google map image of the farm and as it relates to the nearest neighbor—who again, does not have kids.

---

[2] *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).
[3] *United States v. Hammond,* 204 F.Supp. 2d 1157, 1166 (E.D. Wis. 2002) (quotation omitted).



This is the tightest plan possible and it more than satisfies the Bail Reform Act.

Now, it satisfies the Bail Reform Act for two reasons. First, he's in the middle of nowhere and has access to nothing that could be dangerous or a threat to the community. He is sealed off. And all the Bail Reform Act asks for is reasonable assurances—nothing more. Second, not only is the plan rock solid, the government cannot show that he's a specific danger, let alone a danger writ large such that he has to be detained. The Court has read the record and the defense's filing makes it pretty clear the lack of evidence of danger here, but I want to stress that when Anderegg is arrested in March, there is *no* child pornography on his computer. There is only a lot of child erotica and what's alleged

HURLEY BURISH, S.C.

to be obscene materials. Concerning? Maybe. But obscene materials are not child pornography and—and this is an important *and*—the possession of these obscene materials does not violate the law. The Supreme Court in *Georgia v. Stanley* has been *very* clear on this:

> Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds."[4]

That is good and controlling law—that will be briefed extensively in a few months. If true, Anderegg can't distribute the images but he can possess them in the privacy of his own home.[5]

The Court then has to ask: what's the specific evidence of danger—not the government's speculation. This is what they have:

- We have two "artifacts" that look like they would be child pornography in 2020. That doesn't tell the Court much if anything.

- You have Anderegg's statement that he may have come across images of children 16, 18, or 19—he can't be sure. That statement doesn't portend a danger, and listening to the audio the statement is not bad at all.

- You have the allegation in the indictment of distributing the obscene materials to a minor. A crime maybe—and I mean *maybe* because if it's only the images that I saw then most don't come *even close* to obscene, a few may; but that will be for the jury to decide. And regardless, that allegation doesn't mean he can't be released on bond.

- You have the images on his computer that are *not* child pornography and are constitutionally protected. That doesn't portend a specific danger.

---

[4] *Stanley v. Georgia*, 394 U.S. 557, 565 (1969).
[5] *See id.*

4

- You have the allegations in state court. Those allegations are just that—allegations. And he was released based on those allegations and complied with every condition the state put on him, and when he's arrested months later on this charge he doesn't have a single piece of technology that wasn't approved by his probation officer and nothing—not at thing—that resembled threats to children. If past is prologue, then his behavior on bond in the States case (under strict conditions) shows that we can be reasonably assured that Anderegg will comply.

Those allegations are not specific evidence that Anderegg currently poses such a risk that he can't be released on bond.

In sum, the defense submits that's not clear and convincing evidence that he can't be trusted on release and that he has to be detained. Rather, Judge Crocker set out the demands for release and they've been met. This Court should be more than satisfied with the release plan because it reflects Judge Crocker's and the probation department's sound and informed judgment on what will work. But more so, the Court should be satisfied with release because the government bears the burden and it can't meet that burden and show by clear and convincing evidence that Anderegg is such a danger that these conditions will not reasonably assure the community's safety.

Dated this 12th day of July, 2024.

Respectfully submitted,

STEVEN ANDEREGG., *Defendant*

*Electronically signed by Joseph A. Bugni*
Joseph A. Bugni
*Wisconsin Bar No.* 1062514
HURLEY BURISH, S.C.
33 E. Main Street, Suite 400
Madison, WI 53703
(608) 257-0945
jbugni@hurleyburish.com