```
                  UNITED STATES DISTRICT COURT

              FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

           Plaintiff,

  -vs-                                 Case No. 24-CR-50-JDP

STEVEN ANDEREGG,                       Madison, Wisconsin
                                       January 24, 2025
           Defendant.                  9:01 a.m.
_____

         STENOGRAPHIC TRANSCRIPT OF TELEPHONIC CONFERENCE
    HELD BEFORE CHIEF U.S. DISTRICT JUDGE JAMES D. PETERSON
              TRANSCRIBED FROM DIGITAL RECORDING
```

APPEARANCES:

For the Plaintiff:

> U.S. Department of Justice
> BY:   WILLIAM G. CLAYMAN
>       ROSS GOLDMAN
> Child  Exploitation and Obscenity Section
> 1301 New York Avenue, NW, 11th Floor
> Washington, D.C.  20005

For the Defendant:

> Hurley Burish, S.C.
> BY:   JOSEPH A. BUGNI
> 33 East Main Street, Suite 400
> P.O. Box 400
> Madison, Wisconsin  53701-1528

```
           Jennifer L. Dobbratz, RMR, CRR, CRC
           U.S. District Court Federal Reporter
                United States District Court
            120 North Henry Street, Rm. 410
                Madison, Wisconsin  53703
                      (608) 261-5709
```

```
 1             (On the record at 9:01 a.m.)
 2             THE COURT:  All right.  We are here in the matter of
 3   Steven Anderegg, and it is Case No. 24-CR-50.
 4        Let's have the appearances.
 5             MR. CLAYMAN:  Good morning, Your Honor.  This is
 6   William Clayman, and with me is Ross Goldman for the United
 7   States.
 8             THE COURT:  Good morning.
 9             MR. CLAYMAN:  Good morning.
10             MR. BUGNI:  Good morning, Your Honor.  Joe Bugni
11   appearing on behalf of Mr. Anderegg, and he is not participating
12   in this phone call.
13             THE COURT:  All right.  Thanks.
14        All right.  I got Mr. Bugni's letter yesterday.  I thought
15   about whether we should just cancel this, but I thought we might
16   as well get on the phone and reschedule our hearing, our status
17   conference, for a couple of weeks out, and I thought as long as
18   I had you scheduled to be on the phone, we could get the date
19   nailed down.
20        So I guess, based on Mr. Bugni's letter, I would just kick
21   this out two weeks and reschedule for 9:00 on the 7th of
22   February on the assumption that that is the appropriate time
23   frame for us to be looking at.  So let's find out.
24        Does that make sense?  I'll start with Mr. Bugni because
25   you caused the problem.
```

1    MR. BUGNI: I did cause the problem. I've got to be
2    more selective in who I retain.
3    THE COURT: I get it. This is a hard one to get an
4    expert for I'm going to guess, so you have -- I'll give you some
5    leeway. I want you to try to get an expert.
6    So two weeks out?
7    MR. BUGNI: So the 7th at 9:00 --
8    Pardon, Your Honor? Sorry.
9    THE COURT: Two weeks out, does that make sense?
10   MR. BUGNI: Yeah. Yes, three weeks out is great, yeah,
11   but -- the 7th would work for me. I have a PSR in Jefferson at
12   like 8:00 a.m., so if we could move it to like 10:30 or early
13   afternoon, either one would be fine. I can also ditch out if I
14   need to. But, yeah, I can do the 7th, but anytime after maybe
15   10:00.
16   THE COURT: All right. Let me just look at the
17   calendar here. February 7th. 10:00 works for me.
18   Mr. Clayman, does that work for you?
19   MR. CLAYMAN: Yep, Your Honor. That works for the
20   government.
21   THE COURT: All right. So let's set this at 10:00 a.m.
22   on Friday, February 7th. That's two weeks out, Mr. Bugni. And
23   so then I'll expect to schedule the case then. I infer from
24   your letter that one way or the other we will proceed. If you
25   can't find an expert witness within these two weeks, then we'll

4

1     just go ahead and schedule the case; is that right?
2              MR. BUGNI:  That's right, Your Honor.  And if I can,
3     I'll, you know, figure out what, you know, the time line is for
4     the expert and for disclosures, but I'll make sure that we're
5     able to schedule the trial regardless.
6              THE COURT:  Okay.  All right.  Good.  That makes sense.
7         I have one more issue that I want to discuss today, and
8     that is I got a password-protected flash drive yesterday with
9     the images on it.  There are kind of two sets.  One is the set
10    of the three images that were transmitted that relate to Count 2
11    and 3.  I've looked at those.  Based on Mr. Bugni's objection, I
12    restricted myself, and I did not look at the other images that
13    are relevant to the other counts that are the subject of
14    Mr. Bugni's motion to compel.  He seemed to suggest that
15    Mr. Bugni wants to be here when I look at those, and I want to
16    understand the gist of that, what his theory is, because I
17    don't -- usually if I have something that I review, I don't
18    usually expect to have the attorneys supervising my review of
19    the materials.
20         I've got a motion to compel.  I can tell you I'm not going
21    to take the time to look at 13,000 of the images.  Mr. Bugni
22    said he spent a whole afternoon doing it.  I'm not going to do
23    that, but I thought, at least in addressing the motion to compel
24    that seemed to relate to the content of these images, I thought
25    I should at least sample them.

1                So, Mr. Bugni, what's your beef?

2                     MR. BUGNI:  Well, Your Honor -- well, the real beef is

3       I didn't want it to be that you and I are talking about or

4       debating over whether something is obscene or whether it's

5       virtual child pornography or what, you know, the government's

6       theory is when I wasn't sure which image you're referring to.

7       So I have, you know, detailed notes about the hundred or so that

8       I think, you know, probably are a basis for Counts 1 and 4, but

9       the government hasn't really committed to that.  And so I also

10      don't want to say, well, Judge, you know, like that third leg,

11      that's just weird.  It's not, you know, obscene, or whatever it

12      might be.  That's part of it.  If there was going to be some

13      back and forth, I don't have the same knowledge of exactly what

14      you'd be looking at.  So that was my real objection.

15           As far as what the basis of it is, if you're saying, look,

16      Joe, or Mr. Bugni, I really need to see this to see whether or

17      not they qualify as virtual pornography, I think the better way

18      to proceed is just to say we'll see what ones the government is

19      going to, you know, try to prove at trial are obscene, and then

20      we can just limit the review of that, because then I have an

21      idea of exactly what you're looking at, and you're not looking

22      at images that they're not going to argue are obscene.

23                     THE COURT:  All right.  Because I've got the three --

24      you know, I've looked at the three.  I'm fine with that.  I

25      understand that, and I got the arguments that relate to the

1	number three.
2	    But as for the motion to compel, Mr. Clayman, maybe you can
3	help me out, because I'm not going to look at 13,000 images.
4	And so help me understand what the scope of our real problem
5	here is.
6	        MR. CLAYMAN:  Yeah.  So as I understand it, the thumb
7	drive that I guess Special Agent Condon provided to Your Honor
8	yesterday has a sampling of around 300 images or so that we at
9	this point would argue are obscene.  As we noted in our omnibus
10	brief, because of the number of images, I don't think we can say
11	with a hundred percent confidence that there are no other images
12	that are obscene, but certainly the ones that we've already
13	selected we would argue are.  I would also note I don't think
14	we're necessarily committing to introducing all of those at
15	trial.  That's just sort of a sampling of the obscene content.
16	    So that should be what's on that thumb drive.  I'm happy to
17	facilitate the review however we can agree to.  If Mr. Bugni
18	wants to look at those selection of images himself separately, I
19	can do that, whatever would make it easier for the Court to do.
20	        THE COURT:  Well, and I don't want to look at 300
21	images either.  I'm -- you know, get me down to a couple of
22	dozen.
23	    I guess what I'm struggling with here is that we're in a
24	little bit of a conundrum here.  If this were an ordinary case,
25	you'd just produce in your disclosure to the defendant all

```
 1   13,000 and let them wade through.  Now we've got the restriction
 2   on providing contraband to the defendant.  He can come in and
 3   has ample opportunity to inspect that -- I get that -- but for
 4   me to actually review and understand this motion to compel, I'm
 5   going to need you to whittle this down so that we have a little
 6   bit more focused idea of what the government is going to present
 7   at trial because I don't think you're going to put in 300 images
 8   either.
 9           MR. CLAYMAN:  No.  I think that's right, Your Honor.  I
10   just wanted to give the Court, like, a full sampling of what the
11   images are.
12       I'm happy to whittle it down.  My only concern would be I
13   don't know at this point if we can commit that those are the
14   only images we would show, Your Honor, since, you know, we
15   haven't seen any sort of expert report or anything like that
16   from the defense, assuming that's coming.  But I'm certainly
17   happy to whittle it down to a smaller subset for the --
18           THE COURT:  Why don't you whittle it down.  And I get
19   it, you know, if things change and we get the expert disclosures
20   and other issues come up and you think, oh, well, we've got --
21   we've got other images that address those, I'll give you some
22   leeway for kind of changing your case to suit the needs of the
23   development of the expert testimony.  I get that.  I can live
24   with that.
25           But at least for a starting point for me, let's whittle it
```

1  down so that I've got a manageable amount that I can review for
2  the -- and right now, as I see it, it's just for the purposes of
3  the motion to compel.  Mr. Bugni says, hey, they're really -- on
4  Counts 1 and 4, they're just relying on *Stanley*.  That, it seems
5  to me, doesn't require a searching evaluation of the individual
6  images.  But for the motion to compel, I've got to evaluate
7  whether they really count as child pornography within the
8  special definition of child pornography that applies to the law
9  about disclosure pretrial.
10         MR. CLAYMAN:  Correct.
11         THE COURT:  So how do you want to whittle this down?
12  You don't need to give me a new thumb drive if you just give me
13  the file names.
14         MR. CLAYMAN:  Yes.  I think we could do it that way.
15  We could send an email to your chambers with -- copying
16  Mr. Bugni with the specific file names that we would submit
17  that's -- you know, that address whether they constitute virtual
18  child pornography under 2256.  You know, I want to be mindful of
19  what would be helpful to the Court.  Like, is Your Honor
20  thinking 20?  Is that sufficient or is that --
21         THE COURT:  I can do up to 50.  Let's go -- I'll give
22  you 50.
23         MR. CLAYMAN:  Okay.  Yes, I think that makes sense, and
24  we'd be happy to do that.
25         THE COURT:  All right.  Mr. Bugni, how does that sound?

```
 1              MR. BUGNI:  It sounds great, Your Honor.  I -- yeah.  I
 2   think for the basis of the motion to compel you want to look at
 3   those 50.  I think also, I would just say, the ones that don't
 4   constitute virtual child -- you know, like the close definition
 5   of virtual child pornography, which in my view is almost all of
 6   them, those would then be turned over.  Is that the Court's --
 7   where the Court's going with this?  Like, hey, there's a
 8   carveout.  There might be a few.  But the other ones, they're
 9   not contraband --
10              THE COURT:  It's not really where I'm going.
11              MR. BUGNI:  Okay.  All right.
12              THE COURT:  Because they're going to give me their 50
13   greatest hits.  That doesn't mean that the other, you know,
14   12,950 aren't contraband in some way and shouldn't be disclosed.
15   But what it does do is it identifies the ones that matter for
16   you for your trial preparation subject to --
17              MR. BUGNI:  Got it.  Thank you, Your Honor.
18              THE COURT:  -- (unintelligible) and based on what your
19   expert might say, but that's the idea.  The other ones are not
20   going to be disclosed.  The other ones are going to be made
21   irrelevant.
22              MR. BUGNI:  Okay.  Thank you.
23              THE COURT:  All right?  All right.  Whenever I ask for
24   something from counsel, I usually like to give them a deadline.
25        So, Mr. Clayman, how long do you think it will take you to
```

```
 1      give me the list of your 50 images?
 2              MR. CLAYMAN:  So our analyst -- our digital analyst
 3      here is out this week.  Would it be possible to do it by next
 4      Friday?  Is that sufficient time?
 5              THE COURT:  Next Friday works fine.
 6              MR. CLAYMAN:  Okay.  We will do that then.
 7              THE COURT:  All right.  Very good.
 8          All right.  That's my agenda.  Anything else we can do
 9      productively today?  Mr. Clayman?
10              MR. CLAYMAN:  And just to be clear, an email to Your
11      Honor with the file names is fine, or would you like it, like,
12      filed formally on the docket?
13              THE COURT:  An email is fine as long as Mr. Bugni is
14      copied.
15              MR. CLAYMAN:  Understood.  Thank you.
16              THE COURT:  All right.  All right.  Mr. Bugni, anything
17      else?
18              MR. BUGNI:  Nothing from the defense, Your Honor.
19              THE COURT:  All right.  Very good.  We will talk to you
20      in a couple of weeks.  I'll look forward to the email next
21      Friday.
22              MR. CLAYMAN:  All right.  Thank you, Your Honor.
23              MR. BUGNI:  Thank you.
24              THE COURT:  All right.  Very good.  Thanks.
25              MR. BUGNI:  Bye.
```

```
 1        (Proceedings concluded at 9:13 a.m.)
 2                        ***
 3        I, JENNIFER L. DOBBRATZ, Certified Realtime and Merit
 4   Reporter in and for the State of Wisconsin, certify that the
 5   foregoing is, to the best of my ability, a true and accurate
 6   transcription of the digitally-recorded proceedings held on the
 7   24th day of January, 2025, before the Honorable
 8   James D. Peterson, Chief U.S. District Judge for the Western
 9   District of Wisconsin.
10        Dated this 7th day of March, 2025.
11
12
13
14
15                                    _____/s/ Jennifer L. Dobbratz_____
16                                    Jennifer L. Dobbratz, RMR, CRR, CRC
                                            Federal Court Reporter
17
18
19
20
21
22
23
24        The foregoing certification of this transcript does not
     apply to any reproduction of the same by any means unless under
25   the direct control and/or direction of the certifying reporter.
```