```
                    UNITED STATES DISTRICT COURT

               FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

           Plaintiff,

   -vs-                                  Case No. 24-CR-50-JDP

STEVEN ANDEREGG,                         Madison, Wisconsin
                                         February 7, 2025
           Defendant.                    10:00 a.m.
_____

       STENOGRAPHIC TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
       HELD BEFORE CHIEF U.S. DISTRICT JUDGE JAMES D. PETERSON
                 TRANSCRIBED FROM DIGITAL RECORDING

APPEARANCES:

For the Plaintiff:

                  U.S. Department of Justice
                  BY:  WILLIAM G. CLAYMAN
                       ROSS GOLDMAN
                  Child  Exploitation and Obscenity Section
                  1301 New York Avenue, NW, 11th Floor
                  Washington, D.C.  20005

For the Defendant:

                  Hurley Burish, S.C.
                  BY:  JOSEPH A. BUGNI
                  33 East Main Street, Suite 400
                  P.O. Box 400
                  Madison, Wisconsin  53701-1528




              Jennifer L. Dobbratz, RMR, CRR, CRC
                U.S. District Court Federal Reporter
                   United States District Court
                120 North Henry Street, Rm. 410
                   Madison, Wisconsin  53703
                        (608) 261-5709
```

1        (On the record at 10:00 a.m.)
2            THE COURT:  All right.  I've got a recording rolling
3    here.  We are here for a status and scheduling conference in
4    *United States v. Anderegg*, 24-CR-50.
5        Let's find out who we have on the phone starting with the
6    government.
7            MR. CLAYMAN:  Good morning, Your Honor.  This is
8    William Clayman, and Ross Goldman is on the line as well for the
9    United States.
10           THE COURT:  Good morning to you.
11       And for the defense?
12           MR. BUGNI:  Good morning, Your Honor.  Joe Bugni
13   appearing on behalf of Steven Anderegg, and he is not
14   participating in this hearing.
15           THE COURT:  All right.  Very good.
16       All right.  Just an update for you.  We have a draft of our
17   motion on the -- or opinion and order on the pending motions.
18   It's not quite done, but you should have it next week, so that's
19   where that's going.
20       I believe where we left off was we were reconvening now
21   because Mr. Bugni's going to tell us if he has an expert, and
22   then we're going to schedule the case.
23       So, Mr. Bugni?
24           MR. BUGNI:  We have no expert, so we're ready to go
25   with the case.

```
1              THE COURT:  All right.  Very good.
2         All right.  Mr. Clayman, the table I think is set, but
3    before we dig in and start looking at dates, is there anything
4    else the government needs to tell us this morning?
5              MR. CLAYMAN:  I don't think so, Your Honor.  I think,
6    yeah, the next step would be to talk about dates that work for
7    everyone.
8              THE COURT:  All right. Let's start with this:  I
9    assume the government is ready to go at the drop of a hat and
10   Mr. Bugni needs time to prepare, and I'm not saying that based
11   on any knowledge about the case, just kind of the way things
12   usually roll.  But let's find out what people are thinking about
13   in terms of the general range of time for a trial, and I'll
14   start with Mr. Bugni.  And maybe I'm wrong about the parties'
15   relative preparation for trial, but my working assumption is the
16   defense would want more time.  But let's find out.
17        Mr. Bugni, what are you thinking about in terms of the
18   range of trial ready time?
19             MR. BUGNI:  I could actually be ready -- if I get the
20   images, I can be ready in two weeks.  So --
21             THE COURT:  Okay.
22             MR. BUGNI:  -- I don't think that's what anybody here
23   is thinking, but, you know --
24             THE COURT:  Yeah.
25             MR. BUGNI:  -- after dealing with the motions, I
```

```
 1    understand my arguments for trial.
 2           THE COURT:  Okay.
 3           MR. BUGNI:  But I'm good with whatever.  I know
 4    Mr. Clayman has -- end of April is blocked off.  I was looking
 5    at your calendar, Your Honor.  I don't know what you were
 6    thinking as far as -- you know, there are certain -- this guy is
 7    out of custody, so that changes the calculus for some things --
 8           THE COURT:  Sure.
 9           MR. BUGNI:  -- and some civil cases have been pending
10    for a long time.  But other than that, I have a very firm trial
11    the first week in June.
12           THE COURT:  Okay.
13           MR. BUGNI:  Other than that, I'm pretty flexible with
14    trial dates.  So you tell me when you're thinking.
15           THE COURT:  Okay.  I was really completely open-minded.
16    We just looked at our calendar, and I have -- I won't tell you
17    what they are just yet but looking -- starting -- I have five
18    dates that would work without major conflicts on my calendar
19    starting at the end of March and going through the end of May.
20       But let's find out from Mr. Clayman what the government's
21    thought is in terms of when they're ready to go.
22           MR. CLAYMAN:  I think we could be ready really whenever
23    works for the defense and the Court.  As Mr. Bugni said, I do --
24    I am planning to be out of the office for the last two,
25    two-and-a-half weeks of April, so I was hoping to avoid that
```

1  time frame, but other than that, I don't think we have any major
2  conflicts.
3          THE COURT:  All right.  Let me -- I'll give you the
4  dates that I have that are ones without major conflicts.  That
5  means there may be things that I have to move around a little
6  bit, but I can do -- I can do any of these.
7      The dates are March 31st, April 7th, May 5th, May 19th, May
8  27th.  So I think that the first two dates are ones that are
9  most consistent with what people are suggesting, and I would
10 like to, if I can -- I'm going to be out of town and returning
11 on March 7th, and so the March 31st date I think really works
12 for me because I think a lot of the pretrial work that we would
13 do kind of falls in those last two weeks.  So I'm going to
14 propose either March 31st or April 7th.
15     So let's run those up the flagpole and see if we can get
16 those to work.  So March 31st?  Does that work for everybody?
17         MR. BUGNI:  Your Honor, I'd prefer the 7th, if that
18 would work better, but -- I mean, I can do the 31st.
19         THE COURT:  Honestly, that works a little bit better
20 for the Court here too, so let's find out.
21     Mr. Clayman, how does April 7th work?
22         MR. CLAYMAN:  I think that date works better for us as
23 well so --
24         THE COURT:  We're all in agreement then.  Let me pull
25 up my little spreadsheet.

1      And so we're looking at 4/7/2025.  All right.  So here is
2  the way our normal schedule would work out then.  Since we're
3  not -- well, Mr. Bugni doesn't have an expert.
4      Is the government going to have an expert?
5           MR. CLAYMAN:  We would have, I think, two experts, but
6  they would just be computer forensic experts so standard what
7  you would see in a child pornography case.
8           THE COURT:  All right.  All right.  So here is what the
9  schedule would look like then:
10      The government's expert disclosures would be due on
11  February 21st.
12      The defense expert disclosure would be two weeks later on
13  March 7th.  So apparently we're not going to have any of those,
14  and so -- and I don't know if Mr. Bugni -- I assume that the
15  expert we were talking about would be the one on the substantive
16  obscenity -- sort of the value of the images.  I don't know,
17  Mr. Bugni, if that -- your not having an expert would also
18  pertain to forensic experts?  Which I assume --
19           MR. BUGNI:  That wouldn't be the defense, Your Honor.
20           THE COURT:  That would not be the defense you said?
21           MR. BUGNI:  Yeah.
22           THE COURT:  Okay.  So, anyway, so the dates would be
23  February 21st for government experts.
24      We have kind of a placeholder here for defense experts on
25  Friday, March 7th.  I raise that because we could have the

1   government's disclosure a little bit later, but I'd like to keep
2   it the way it is.  Even though I don't expect Mr. Bugni to have
3   an expert, if there's anything that he wants to respond to in
4   the government's expert disclosure, this gives us a little room
5   for it.
6           MR. CLAYMAN:  I would note, Your Honor -- sorry to
7   interrupt -- we did file an expert disclosure back with our
8   response brief, so there is one on the docket already.
9           THE COURT:  All right.  Great, great.
10       Then Friday, March 21st, would be your final pretrial
11  conference submissions.
12       Then Wednesday, March 26th, would be your telephonic final
13  pretrial conference with Magistrate Judge Boor.
14       And then on Wednesday, April 2nd, would be your final
15  hearing with me.
16       And then Monday, April 7th, would be our trial.
17       And I believe the parties said they anticipated -- was it
18  two or three days?
19          MR. CLAYMAN:  I think three days would be a good
20  estimate, Your Honor.
21          THE COURT:  Three days.  And what I usually do is,
22  because things are a little unpredictable, usually things go
23  faster than people expect in my courtroom, and so I like to keep
24  things moving, and I try to take advantage of the full day of
25  work.  So usually it's shorter than people anticipate, but I --

1    in selecting the jury, I tell the jury that I will need them all
2    week, that I don't expect to take all week but, just in case, I
3    want them to be available all week, so that's the approach I'll
4    take here.  So, anyway, I'll anticipate about a three-day trial,
5    have the jury available for the full week, and then we'll
6    probably get it done in two days.
7         So that will be our schedule.  I'll issue an order so that
8    we've got it on the docket, but I think that resolves what we
9    need to resolve today.  But we're together, and if there's --
10             MR. BUGNI:  So --
11             THE COURT:  -- anything productive we can do, we're
12   going to try to do it.
13        So, Mr. Bugni, what else you got?
14             MR. BUGNI:  So -- it's just about the images
15   themselves.  So as I said in the pleadings, a big part of my
16   ability to prepare for the defense is to be able to have the
17   images.  I understand you looked at 50, and I just want to
18   know -- let's say you say 20 are virtual, like they're nearly
19   indistinguishable -- and I don't know which 50 they are.  I
20   haven't gone over to DCI to cross-reference it --
21             THE COURT:  Okay.
22             MR. BUGNI:  -- but do I get the 30 that are going to be
23   presented so that I can use them in my PowerPoint?  Because that
24   becomes a big issue for me is access to those images and the
25   ability to actually put them in the PowerPoint and show them in

1    my opening and closing.
2            THE COURT:  All right.  Let's find out what
3    Mr. Clayman's response is.  It seemed to me there are two issues
4    here.  One is the access to the images, and second is
5    identifying a smaller set of images.  It sounds like Mr. Bugni
6    is angling to get it down to 30 from 50.
7        And so, Mr. Clayman, I looked at all 50.  I have looked at
8    a random sort of sampling of the others that weren't identified
9    just to get an idea of what was in the set that I have.
10   Obviously, there's -- I do not have a statistically significant
11   sample.  I just browsed around a little bit to sort of see what
12   the other ones looked like given that 50 were selected.
13       And so, Mr. Clayman, having looked at this, my sense is
14   that you don't need 50 of them and that you probably wouldn't
15   take the time to present 50 at trial, and it would seem to be
16   fair to kind of lay out what -- to make the problem smaller,
17   just to identify a smaller set of images that the government
18   would rely on.
19           MR. CLAYMAN:  Yes, Your Honor.  I don't -- we haven't
20   made really a decision at this point about sort of what specific
21   images we would intend to show, and if we do make that, I'm
22   certainly happy to narrow that down and provide that list to
23   Mr. Bugni.  I think the issue, at least as I understand it, is
24   Mr. Bugni's asking for us to provide copies of these images for
25   him to review outside of a government facility.

1         THE COURT: Well, that's the separate issue. We've
2    got -- one is just how many issues are there and then does Bugni
3    get actually access to them. And I understand they're
4    contraband, and I get all that, but there comes a point where I
5    want to make sure that Mr. Bugni has the chance to prepare.
6         So let's deal with one issue at a time. Let's figure out
7    how many you're going to want to use at trial and when you're
8    going to make that decision.
9         MR. CLAYMAN: Understood, Your Honor. Candidly, we
10   have not had a really serious conversation about that at this
11   point, but that's something we're happy to do. I don't have a
12   good answer to provide right now though, unfortunately.
13        THE COURT: All right. And I will tell you this, and,
14   you know, sometimes I feel like if I get a look at the evidence
15   or I have some sense of what's going on, I can see, like, oh,
16   the government has really got to make some tough decisions here.
17   I don't see these as tough decisions only in the sense that you
18   have a vast fund of these images. Many of them are very highly
19   repetitive, and so I think you could make essentially the same
20   case almost if you just randomly selected 20 images from the set
21   that you've identified as 50. And so I don't really see what's
22   at stake here substantively.
23        Here's what I'm going to suggest, and I'm going to -- given
24   our April trial date, we've got a little bit of time to work
25   this out, but I'm going to ask the parties to confer within 14

1    days about what images are actually going to be used.  And so I
2    think you can do this without court involvement, but I would
3    like the government to make a good-faith effort to kind of
4    tailor its case here, and, again, I don't -- I'm not inside the
5    mind of the prosecutor here, but I really have a hard time
6    figuring out how this is a case critical decision -- a strategic
7    decision for the government.
8         So within 14 days I want you to confer with Mr. Bugni to
9    narrow down the set of images and then, you know, get the number
10   smaller and identify the images that you're going to go to.  If
11   you need court help, I will -- I'll mediate the discussion, but
12   I don't think you're going to need my help to do this.  I think
13   you can get this pared down to a reasonable number.  So that's
14   how we'll handle the number and identification of the images.
15        Let's just have a little bit of argument here substantively
16   about why Mr. Bugni should not have the images for his trial
17   preparation and presentation.  And I'm kind of anticipating what
18   I'm going to hear, and I'm not -- probably not going to resolve
19   it right here at the moment, but I want to know what the stakes
20   are.
21        So what would be the harm if Mr. Bugni were able to, just
22   prior to trial, gain access under appropriate controls so that
23   he can make a PowerPoint for his trial presentation?
24             MR. CLAYMAN:  Yes, Your Honor.  I don't think we have
25   much to add to what we already put in the response brief.  I

1   mean, in our view, many of these images are virtual child
2   pornography, and they have to be handled under the confines of
3   3509.  But even if the Court disagrees, in our view they're
4   contraband, obscene images, so --
5           THE COURT:  I will say this, whether they're obscene or
6   not I think is a disputed fact, but I'm going to accept that in
7   that I certainly think that these have to be treated with
8   caution.  But at the end of the process, we're going to have to
9   go to trial, and I think in some way Mr. Bugni is going to have
10  to have his hands on them so he can present them at trial.
11          MR. CLAYMAN:  Understood, Your Honor.  And I mean,
12  we -- I haven't tried an obscenity case before, but in the
13  context of child pornography cases, I mean, I have provided
14  ample privacy and opportunity in government facilities for
15  defense attorneys to use their laptops to make PowerPoints and
16  things of that nature.  So that's how we would propose handling
17  it, but I understand the Court may have a different view on what
18  is reasonable here.
19          THE COURT:  And so explain what you mean by that.  So
20  at a certain point prior to trial, the defense shows up with a
21  laptop, and they are able to copy the materials onto the laptop
22  to make a PowerPoint presentation?
23          MR. CLAYMAN:  Essentially.  I believe in the past we
24  provided just sort of a blank laptop, because I don't think the
25  defense wanted to put it on any of their laptops, which would

1     probably have to be wiped afterwards anyway.
2             THE COURT:  Yeah.
3             MR. CLAYMAN:  So what I would envision is we could
4     provide just a blank laptop that we would never go into or touch
5     with the images on there, and Mr. Bugni could do whatever he
6     wanted with them.
7             THE COURT:  All right.  Okay.  I think I know your
8     position, Mr. Bugni, but I gave Mr. Clayman a chance to talk
9     about that.  Let's hear what you have in mind.
10            MR. BUGNI:  Well, I would like to have them, like, two
11    weeks ahead of time.  I would like to -- this is what I'm going
12    to do for opening and closing so nobody has any suspense.  If it
13    survives these motions, which I'm hoping it doesn't, but I'm
14    going to take the pictures that are allegedly obscene, and I'm
15    going to put them right next to a picture that's just like it
16    that I can get at any art museum, that I can get online, that I
17    can get anywhere else, and if that's First Amendment protected,
18    so is my client's.  And that is crucial, to have that
19    juxtaposition, have the time to find those images, and then an
20    ability to actually make the PowerPoint.
21            THE COURT:  Right.
22            MR. BUGNI:  The PowerPoint here is more important than
23    the cross-examinations.
24         So, Judge, you get it.  I need time with these.  And, you
25    know, whether it's a laptop, I don't care.  I just need the

1    images.  I'll work around whatever strictures have to be put on
2    it, but it can't be that I'm at DCI trying to do this.  It needs
3    to be that I have the freedom within my office, and I'll put any
4    kind of confidentiality order, you know, the government wants.
5    I just need to be able to have these.
6            THE COURT:  Okay.  And you're saying about two weeks
7    before trial is when you would need them?
8            MR. BUGNI:  I mean, I would prefer a month because, you
9    know, like, the last two weeks of trial, as we all know, are
10   sort of, like --
11           THE COURT:  Yeah.
12           MR. BUGNI:  -- a storm, but I know what the defense is
13   here --
14           THE COURT:  Yeah.
15           MR. BUGNI:  Judge -- sorry.
16           THE COURT:  Well, and I was just going to say, like --
17   here's what I'm envisioning is you're entitled to ample
18   opportunity to review and study these images ahead of time, and
19   so that's your right, and the government has already said you've
20   got -- they'll give you that.  And so you can start doing your
21   homework to figure out what pieces of art you want to use as
22   comparators before you actually have access to them.  And then
23   within, you know, say, two weeks -- and, again, I understand
24   what trial prep is like.  I don't want you to have to be doing
25   this the night before so -- but within a general time frame of,

1    like, two weeks before, then you get the laptop or whatever it
2    is with the images, and then you can take those back to your
3    office and do your PowerPoint.  So that's the time frame that
4    I'm -- what I'm trying to get to is what is the time frame when
5    you actually get access to copies to use under whatever
6    strictures the -- is negotiated.  And again --
7              MR. BUGNI:  Yeah, I mean -- three weeks is -- three
8    weeks --
9              THE COURT:  Three weeks is what you'd like.
10        Here's what I'm going to do:  I'm just going to add this as
11   a topic to your conference that you're going to have within two
12   weeks to talk about a reasonable way of doing this, and if you
13   can't come up with a reasonable one by negotiating it, then I'll
14   intervene and help you reach a decision.  But what I have in
15   mind here is that the groundwork for an agreement is here, which
16   is that the government, within some short period of time just to
17   reduce the risk of unauthorized disclosure, will have a clean
18   laptop where you can get copies of it, and then you can use that
19   clean laptop to make your PowerPoint presentation.  If there are
20   technical impediments, you can talk about those in your
21   conference, but that's kind of the rough idea of an agreement.
22        And so three weeks seems fine.  Again, I know what the
23   immediate pretrial period is like, so I don't want to bind
24   Mr. Bugni up too much by having a short amount of time to
25   prepare what's the central part of his case.  But I do recognize

```
 1    the sensitivity of these images, so I don't want them floating
 2    around for any longer than is possible.  But I think there's a
 3    basis for negotiating this.  You can let me know if there's more
 4    trouble that needs to be resolved.
 5         So within two weeks, you're going to talk about -- both
 6    about the identification of the images and then the mechanism of
 7    providing them to Mr. Bugni prior to trial.
 8              MR. CLAYMAN:  Understood, Your Honor.
 9              THE COURT:  All right.  Anything else we can work out
10    today?
11              MR. BUGNI:  No, Your Honor.  Thank you.
12              MR. CLAYMAN:  Nothing from the government either.
13              THE COURT:  All right.  Thank you, both.  I look
14    forward to working with you.
15              MR. CLAYMAN:  Thank you, Your Honor.
16         (Proceedings concluded at 10:21 a.m.)
17                                ***
18
19
20
21
22
23
24
25
```

1     I, JENNIFER L. DOBBRATZ, Certified Realtime and Merit
2  Reporter in and for the State of Wisconsin, certify that the
3  foregoing is, to the best of my ability, a true and accurate
4  transcription of the digitally-recorded proceedings held on the
5  7th day of February, 2025, before the Honorable
6  James D. Peterson, Chief U.S. District Judge for the Western
7  District of Wisconsin.
8     Dated this 7th day of March, 2025.
9
10
11
12
13
14          /s/ Jennifer L. Dobbratz
15       Jennifer L. Dobbratz, RMR, CRR, CRC
             Federal Court Reporter
16
17
18
19
20
21
22
23
24     The foregoing certification of this transcript does not
   apply to any reproduction of the same by any means unless under
25 the direct control and/or direction of the certifying reporter.